**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF KENTUCKY**

ON FIRE CHRISTIAN CENTER, INC.,    |

                                |

    **Plaintiff,**                  |

                                |     **Civil Action No.** ___3:20-cv-264-JRW___

**v.**                                |

                                |

GREG FISCHER, in his official    |
capacity as Mayor of Louisville Metro, and    |
the CITY OF LOUISVILLE,    |

                                |

    **Defendants**              |

---

**PLAINTIFF'S ORIGINAL COMPLAINT**

Plaintiff On Fire Christian Center, Inc. ("OFCC" or the "Church") brings this action to stop Mayor Greg Fischer and the City of Louisville (collectively, "Defendants") from violating its rights under the First Amendment to the United States Constitution, Section 1 and Section 5 of the Kentucky Constitution, and Kentucky's Religious Freedom Act, and alleges as follows:

**I. Preliminary Statement**

1.      Easter is among the most important holidays on the Christian calendar.  In the Christian faith, Easter is a celebration of the physical resurrection of Jesus Christ from the dead on the Sunday morning following his crucifixion.  The bodily assembly of the church on Easter Sunday each year to celebrate in a special way Christ's bodily resurrection is of particular importance and significance for Christians generally and OFCC particularly.

2.      Unfortunately, the assembly of Christian believers this year poses unique challenges because of the COVID-19 pandemic that has spread throughout the United States of America.  OFCC is committed to physically gathering for Easter in a manner consistent with

guidelines issued by the Centers for Disease Control and Prevention ("CDC") for community and faith-based organizations to ensure the safety and well-being of members and congregants.

3.     Defendants recently announced that drive-in Easter church services are categorically prohibited in Louisville this year.  In conjunction with this announcement, Defendants encouraged people to contact the city's 311 phone number if they are aware of a house of worship that plans to hold a drive-in church service in contravention of the prohibition. OFCC sent Defendants a letter on April 9, 2020 seeking to convince Defendants to reconsider their directive, but Defendants never responded.

4.     Defendants' directive goes beyond the CDC guidelines and targets religious exercise contrary to both federal and Kentucky state law.

## II. Parties

5.     OFCC, founded in 2001, is a Christian church in Louisville, Kentucky.  It is a religious non-profit organization the principal office of which is located at 5627 New Cut Road, Louisville, Kentucky 40214.

6.     Defendant Greg Fischer is and was at all times relevant hereto the duly-elected Mayor of Louisville Metro and as such was responsible for the promulgation and implementation of the policies, procedures, and practices of the City of Louisville, Kentucky.  He is named as a defendant in this action in his official capacity as Mayor.

7.     Defendant The City of Louisville is and was at all times relevant hereto a consolidated urban-county government duly organized under Kentucky law and, as such, was and is responsible for the policies, procedures, and practices implemented through its various agencies, agents, departments, and employees.

### III. Jurisdiction and Venue

8.      The Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 42 U.S.C. § 1983 because OFCC alleges an imminent violation of its rights under the Constitution of the United States.  It has supplemental jurisdiction over OFCC's state-law claims under 28 U.S.C. § 1367.

9.      The Court may declare the legal rights and obligations of the parties in this action pursuant to 28 U.S.C. § 2201 because the action presents an actual controversy within the Court's jurisdiction.

10.      Venue is proper in this judicial district under 28 U.S.C. § 1391(b).  All Defendants are residents of and/or perform their official duties in this district.  In addition, a substantial part of the events giving rise to the claims in this Complaint arose in this district, because the prohibition of OFCC's Easter Sunday service will be enforced in this district.  OFCC resides in this district as well.

### IV. Facts

### A. Plaintiff On Fire Christian Center, Inc.

11.      OFCC is a Christian church in Louisville, Kentucky, led by Chuck Salvo, Lead Pastor.

12.      OFCC is "a ministry dedicated to awakening a generation," prioritizing "God's presence and His purpose for our lives."  The Church "engages thousands of people each month with the transforming power of the gospel and encourages the rebuilding of the broken down walls of biblical truth."  On Fire Christian Church, *About Us*, https://www.chucksalvo.net/about-us (last accessed April 9, 2020).

**B. The Significance of Gathering on Easter**

13.     Easter is among the most important of holidays on the Christian calendar.  BBC,

*Religions: Easter*, https://www.bbc.co.uk/religion/religions/christianity/holydays/easter.shtml

("Easter is the most important Christian festival.  It celebrates Jesus Christ's resurrection from

the dead, three days after he was executed by crucifixion.").  In the Christian faith, Easter is a

celebration of the physical resurrection of Jesus Christ from the dead on the Sunday morning

following his crucifixion.  *See Easter*, CAMBRIDGE ENGLISH DICTIONARY (defining "Easter" as a

"Christian religious holiday to celebrate Jesus Christ's return to life after he was killed").

14.     For more than 2,000 years, Christians have gathered physically each Sunday

throughout the year in observance of that event, and the physical gathering of the church is central

to that celebration.  Indeed, the Greek word translated "church" in our English versions of the

Christian scriptures is the word "ekklesia," which literally means "assembly."  A.T. Robertson, A

GRAMMAR OF THE GREEK NEW TESTAMENT IN THE LIGHT OF HISTORICAL RESEARCH (3d ed.

1919).  The bodily assembly of the church on Easter Sunday each year to celebrate in a special

way Christ's bodily resurrection is of particular importance and significance for Christians.

15.     As with other communities of Christian faith around the country, Easter has a

special and significant meaning to OFCC.  The Church has been planning for Resurrection

Sunday for weeks, anticipating the service as an opportunity to "[a]sk God what He wants [the

Church] to do this year to celebrate Him on Jesus' resurrection day."  On Fire Christian Church,

*Events*, https://www.chucksalvo.net/events (last accessed April 9, 2020).

16.     More importantly, *gathering* on Easter is of utmost importance to OFCC.  The

Church "believe[s] building relationships with each other is essential to [their] growth as

Christians."  On Fire Christian Church, *Main Page*, https://www.chucksalvo.net/ (last accessed

April 9, 2020).  OFCC believes that a central part of building relationships is worshipping in the same physical space.  Indeed, the Christian scriptures exhort that believers "not neglect[t] to meet together."  Hebrews 10:25 (ESV).

17.     OFCC and its members have a sincerely held religious belief that physical corporate gathering of believers each Sunday, especially on Easter Sunday, is a central element of religious worship commanded by the Lord.

18.     It is a substantial burden on the religious exercise of OFCC and its members if they cannot meet at all for in-person corporate worship for Easter service.

19.     The Church has been hosting drive-in church services in its parking lot for several weeks consistent with CDC guidelines.

20.     Difficulties posed by the current outbreak have only inspired the diverse community of OFCC to "join together in unity to share the hope and love of Jesus Christ to [their] neighbors, friends & families."   On Fire Christian Church, *Main Page*, https://www.chucksalvo.net/ (last accessed April 9, 2020).  In the words of Wendy Reesor, a member of the Church, "it's just really great that [the Church] get[s] to fellowship and come together at a time like this.  It helps with the isolation […] It's really confusing for a lot of people and we need hope."   Alton Strupp, *This Louisville Church Is Working Around Social Distancing With Drive-In Service*, COURIER JOURNAL (March 29, 2020), https://www.courier-journal.com/story/news/2020/03/29/louisville-church-hosts-drive-in-service-amid-coronavirus/2935950001/.

21.     To address the challenges posed by the COVID-19 outbreak, OFCC is committed to physically gathering for Easter in a manner consistent with guidelines issued by the CDC for community and faith-based organizations to ensure the safety and well-being of members and

congregants.  *See* Centers for Disease Control, *Interim Guidance for Administrators and Leaders of Community- and Faith- Based Organizations to Plan, Prepare, and Respond to Coronavirus Disease 2019 (COVID-19)*, https://www.cdc.gov/coronavirus/2019-ncov/community/organizations/guidance-community-faith-organizations.html.

22.     Consistent with CDC guidelines, at OFCC's planned drive-in church service this Easter Sunday, cars will park six feet apart, and all congregants will remain in their cars with windows no more than half open for the entirety of the service.  The pastor will preach outside with speakers.  Multiple security personnel will be present to ensure proper spacing between cars and orderly compliance with all guidelines.  Other than security personnel, the only persons not restricted to a car will be the pastor and a videographer, both of whom will remain a safe distance from the parked cars.  This will provide strong protection for the health of the church community and others by preventing potential contact and ensuring against the transmission of disease through the service.

### C. Prohibition of Drive-In Church Services

23.     On March 6, 2020, Andrew Beshear, in his official capacity as the Governor of Kentucky, signed Executive Order 2020-215, instituting a state of emergency due to the COVID-19 outbreak.

24.     The Kentucky Cabinet for Health and Family Services, a branch of Governor Beshear's administration, issued an order on March 19, 2020 in connection with this state of emergency, prohibiting mass gatherings due to the COVID-19 outbreak.  The term "mass gatherings" was defined to include "any event or convening that brings together groups of individuals, including, but not limited to, community, civic, public, leisure, faith-based, or sporting events; parades; concerts; festivals; conventions; fundraisers; and similar activities."

Excluded from the definition of "mass gatherings" were "normal operations at airports, bus and train stations, medical facilities, libraries, shopping malls and centers, or other spaces where persons may be in transit," as well as "typical office environments, factories, or retail or grocery stores where large numbers of people are present, but maintain appropriate social distancing."

25.     The March 19, 2020 order was promulgated pursuant to the Cabinet for Health and Family Services' authority under several statutes, including KRS Chapter 39A.  Ky. Rev. Stat. § 39A.190 gives police officers authority to "arrest without a warrant any person violating or attempting to violate in the officer's presence any order or administrative regulation made pursuant to" KRS Chapter 39A.

26.     During an April 6, 2020 press conference, Governor Beshear discussed "drive in church services" and the general "rules that [officials] need to see in place" for such services.  As a general matter, Governor Beshear stated: "Make sure if you're going to do this … nobody gets out of the car, cars are six feet apart, you're not passing things in the car … Please follow those rules.  We want to at least have the opportunity to do this type of thing."  *See* Andy Beshear, *Gov. Beshear on drive-in church services: 'Stay inside your car,'* Lexington Herald-Leader (Apr. 6, 2020), https://www.kentucky.com/news/state/kentucky/article241816076.html.

27.     Mayor Fischer has been engaged in a public campaign to intimidate churches and their congregants from hosting or attending drive-in church services for Easter 2020.  As he stated most recently on April 9, 2020, recorded by video, "We are not allowing churches to gather either in person or in any kind of drive-through capacity.  Ok so, if you are a church or you are a church-going member and you do that, you're in violation of the mandate from the governor, you're in violation of the request from my office and city government to not do that. . . . We're saying no church worshiping, no drive-throughs."  *See* Greg Fischer, *Daily COVID-19*

*Briefing by Louisville Mayor Greg Fischer*, https://www.wave3.com/2020/04/09/fischer-confirms-new-cases-more-deaths/ (last accessed April 9, 2020).

28.     Additionally, Louisville Metro Police has attempted to intimidate churches from meeting, going so far as to encourage the reporting of social distancing violations, including those by any religious organizations that plan to hold drive-in religious services, to a city-run telephone number.  Savannah Fadens & Ben Tobin, *Church vs. State: Can Kentucky Governments Block Religious Gatherings Amid COVID-19?*, LOUISVILLE COURIER J. (Apr. 9, 2020), https://www.courier-journal.com/story/news/2020/04/09/coronavirus-kentucky-can-beshear-block-religious-gatherings/2972356001/.

29.     In short, Mayor Fischer has declared that drive-in church services would violate state and local laws and orders and has threatened participating persons and entities with penalties, such as "arrest without a warrant" for violating the March 19, 2020 order under Ky. Rev. Stat. § 39A.190.

30.     Under Mayor Fischer's statements, the mandate is violated even if a congregation abides by the social distancing and hygiene guidelines provided by the CDC and the Kentucky Cabinet for Health and Family Services.

31.     Mayor Fischer's directive is directly targeted at religious gatherings, goes beyond the executive order of Governor Beshear, and is in contravention of the federal Constitution and the laws and constitution of the Commonwealth of Kentucky.

### V. First Cause of Action
### The Free Exercise Clause of the First Amendment to the U.S. Constitution

32.     Paragraphs 1 through 31 are hereby incorporated as if set forth fully herein.

33.     The First Amendment of the Constitution protects the "free exercise" of religion. Fundamental to this protection is the right to gather and worship.  *See W. Va. State Bd. of Educ.*

*v. Barnette*, 319 U.S. 624, 638 (1943) ("The very purpose of a Bill of Rights was to withdraw certain subjects from the vicissitudes of political controversy, to place them beyond the reach of majorities and officials and to establish them as legal principles to be applied by the courts … [such as the] freedom of worship and assembly.").  The Free Exercise Clause was incorporated against the states in *Cantwell v. Connecticut*, 310 U.S. 296 (1940).

34.     As the Supreme Court has noted, "a law burdening religious practice that is not neutral or not of general application must undergo the most rigorous of scrutiny."  *Church of the Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520, 546 (1993).

35.     Defendants have prohibited drive-in religious services, have threatened criminal penalties for holding such services, and have thus substantially burdened Plaintiff's religious exercise.

36.     "[T]he minimum requirement of neutrality is that a law not discriminate on its face."  *Id.* at 533.

37.     Defendants' restrictions have specifically and explicitly targeted drive-in religious gatherings and are thus not neutral on their face.

38.     Relatedly, government action is not generally applicable if its prohibitions substantially underinclude non-religiously motivated conduct that might endanger the same governmental interest that the law is designed to protect.  *Id.* at 542-46.

39.     Defendants' prohibition of drive-in church services in the name of social distancing is not generally applicable.  There are numerous exceptions to the March 19, 2020 order that Defendants are not cracking down on, such as establishments like retail stores, where far more people come into closer contact with less oversight.

40.     Laws and government actions that burden religious practice and are either not

neutral or not generally applicable must satisfy a compelling governmental interest and be

narrowly tailored to achieve that end.  *See id.* at 546.

41.     Defendants' mandate is not "narrowly tailored" because the ban on drive-in

religious services is absolute, not accounting for services, like Plaintiff's, where the CDC and

Kentucky Cabinet guidelines are carefully adhered to, and thus satisfy the public health concerns

to which the guidelines are directed.

42.     Requiring Plaintiff to abstain from its religious gatherings, despite substantial

modifications to satisfy the public health interests at stake, violates Plaintiff's Constitutional

right to free exercise of its religion.

## VI. Second Cause of Action
### The Freedom of Assembly Clause of the First Amendment to the U.S. Constitution

43.     Paragraphs 1 through 42 are hereby incorporated as if set forth fully herein.

44.     The First Amendment of the Constitution protects the "right of the people

peaceably to assemble."  The Freedom of Assembly Clause was incorporated against the states in

*De Jonge v. Oregon*, 299 U.S. 353 (1937).

45.     "The right of free speech, the right to teach, and the right of assembly are, of

course, fundamental rights."  *Whitney v. California*, 274 U.S. 357, 373 (1927).  When a

government practice restricts fundamental rights, it is subject to "strict scrutiny" and can be

justified only if it furthers a compelling government purpose and, even then, only if no less

restrictive alternative is available.  *See, e.g.*, *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S.

1, 16-17 (1973); *Dunn v. Blumstein*, 405 U.S. 330 (1972).

46.     By denying Plaintiff the ability to assembly via a drive-in church service,

Defendants are in violation of the Freedom of Assembly Clause.  Defendants cannot meet the no-

less-restrictive-alternative test.  The CDC's social distancing guidelines are appropriate to limit

the spread of COVID-19.  Imposing more restrictive requirements that target only churches and

their drive-in services is not the least restrictive means of achieving Defendants' public safety

goal.

47.     Requiring Plaintiff to abstain from its religious gatherings, despite substantial

modifications to satisfy the public health interests at stake, violates Plaintiff's Constitutional

right to peaceably assemble.

### VII. Third Cause of Action
### Sections 1 and 5 of the Kentucky Constitution

48.     Paragraphs 1 through 47 are hereby incorporated as if set forth fully herein.

49.     Sections 1 and 5 of the Kentucky Constitution provide the right to "worship" and

the right to "religious freedom."  KY. CONST. §§ 1, 5.

50.     In *Gingerich v. Commonwealth*, 382 S.W.3d 835, 839 (Ky. 2012), the Supreme

Court of Kentucky held that the free exercise of religion protections afforded by the Kentucky

Constitution offer the same protection that the federal Constitution provides.

51.     For the reasons stated in Section V, requiring Plaintiff to abstain from its religious

gatherings, despite substantial modifications to satisfy the public health interests at stake,

violates Plaintiff's free exercise rights under the Kentucky Constitution as well.

### VIII. Fourth Cause of Action
### Kentucky Religious Freedom Act, Ky. Rev. Stat. § 446.350.

52.     Paragraphs 1 through 51 are hereby incorporated as if set forth fully herein.

53.     The Kentucky Religious Freedom Act, Ky. Rev. Stat. § 446.350 ("KRFA"), states

that "[g]overnment shall not substantially burden a person's freedom of religion" unless the

government "proves by clear and convincing evidence that it has a compelling governmental

- 11 -

interest in infringing the specific act or refusal to act and has used the least restrictive means to further that interest."  Ky. Rev. Stat. § 446.350.

54.     In short, the KRFA imposes strict scrutiny on all government actions that "substantially burden a person's freedom of religion." *Id.*

55.     The KRFA defines a "burden" as including "indirect burdens such as withholding benefits, assessing penalties, or an exclusion from programs or access to facilities."  *Id.*

56.     The KFRA is "equivalent" to the federal Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb *et seq.  Moorish Sci. Temple of Am., Inc. v. Thompson*, No. 2014-CA-001080-MR, 2016 WL 1403495, at *4 (Ky. Ct. App. Apr. 8, 2016).  Like RFRA, the KFRA "is a codification by the legislature of the strict scrutiny test applied in case law."  *Id.* Because the statutes are substantially similar, cases interpreting RFRA are instructive in interpreting the KFRA.

57.     RFRA broadly defines the "exercise of religion" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief."  42 U.S.C. § 2000bb–2(4) (citing 42 U.S.C. § 2000cc–5).  In *Burwell v. Hobby Lobby Stores, Inc.*, the United States Supreme Court stated that the exercise of religion involves "not only belief and profession but the performance of (or abstention from) physical acts that are engaged in for religious reason."  573 U.S. 682, 710 (2014) (quoting *Emp't Div., Dep't of Human Res. of Oregon v. Smith,* 494 U.S. 872, 877 (1990)).

58.     A compelling interest includes "only those interests of the highest order." *Wisconsin v. Yoder*, 406 U.S. 205, 215 (1972).  And the least-restrictive-means standard is "exceptionally demanding."  *Hobby Lobby*, 573 U.S. at 728.  To pass the least-restrictive-means

test, the government must show "that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion" by the religious objector. *Id.*

59.    By denying Plaintiff the ability to hold a drive-in church service, Defendants are in violation of the KFRA.  Defendants cannot meet the least-restrictive-means test.  The CDC's social distancing guidelines are appropriate to limit the spread of COVID-19.  Imposing more restrictive requirements that target only churches and their drive-in services is not the least restrictive means of achieving Defendants' public safety goal.

### IX. Prayer for Relief

WHEREFORE, Plaintiff requests this Court enter an order:

a.    Declaring that Defendants have unlawfully burdened Plaintiff's religious free exercise rights in violation of the Free Exercise Clause of the First Amendment to the U.S. Constitution;

b.    Declaring that Defendants have unlawfully burdened Plaintiff's religious free exercise rights in violation of Sections 1 and 5 of the Kentucky Constitution;

c.    Declaring that Defendants have unlawfully burdened Plaintiff's religious free exercise rights in violation of the Kentucky Religious Freedom Act, Ky. Rev. Stat. § 446.350;

d.    Declaring that Defendants have unlawfully burdened Plaintiff's right to peaceably assemble in violation of the Freedom of Assembly Clause of the First Amendment to the U.S. Constitution;

e.    Permanently enjoining Defendants from prohibiting Plaintiff from physically gathering via a drive-in church service;

f.    Awarding Plaintiff costs and reasonable attorneys' fees and expenses; and

g.     Granting Plaintiff all such other and further relief as the Court deems just and

proper.

Dated: April 10, 2020                       Respectfully submitted,

*/s/ J. Brooken Smith*
J. Brooken Smith
Michael G. Swansburg, Jr.
SWANSBURG & SMITH, PLLC
291 N. Hubbards Lane, Suite 172
Box 321
Louisville, Kentucky 40207
Phone: (502) 805-5960
jbs@swansburgandsmith.com
mgs@swansburgandsmith.com

*/s/ Matthew T. Martens*
Matthew T. Martens (*pro hac vice forthcoming*)
Kevin Gallagher (*pro hac vice forthcoming*)
Hyun-Soo Lim (*pro hac vice forthcoming*)
Andrew Miller (*pro hac vice forthcoming*)
WILMER CUTLER PICKERING HALE AND
DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
Tel: (202) 663-6000
Fax: (202) 663-6363
Matthew.martens@wilmerhale.com

*/s/ Hiram S. Sasser, III*
Hiram S. Sasser, III (*pro hac vice forthcoming*)
Roger Byron (*pro hac vice forthcoming*)
First Liberty Institute
2001 W Plano Pkwy
Plano, TX 75075
Tel: (972) 941-4444
Fax: (972) 941-4457
hsasser@firstliberty.org

*Attorneys for Plaintiff On Fire Christian Center,
Inc.*