**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY**

| | |
|---|---|
| **ON FIRE CHRISTIAN CENTER, INC.,** | |
| **Plaintiff,** | |
| **v.** | Case No. 3:20-cv-264-JRW _____ |
| **GREG FISCHER, in his official capacity as Mayor of Louisville Metro, and the CITY OF LOUISVILLE,** | **Oral Argument Requested** |
| **Defendants.** | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S
EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER**

# TABLE OF CONTENTS

I.  Introduction ................................................................................................................. 1

II. Factual Background ..................................................................................................... 2

    A.  Easter is one of the most important celebrations for Christians ............................ 2

    B.  Gathering on Easter is critical for the OFCC congregation. ................................. 3

    C.  Prohibition of Drive-In Church Services ............................................................. 5

III. Argument and Authorities .......................................................................................... 7

    A.  OFCC is Substantially Likely to Succeed on the Merits of its Free
        Exercise Claim, its Freedom of Assembly Claim, and its claims under the
        Kentucky Constitution and KFRA. ...................................................................... 8

        1.  OFCC is Likely to Succeed on the Merits of Its Free Exercise
            Claim under the U.S. Constitution. ............................................................. 8

        2.  OFCC is Likely to Succeed on the Merits of Its Freedom of
            Assembly Claim under the U.S. Constitution. ......................................... 10

        3.  OFCC is Likely to Succeed on the Merits of Its Free Exercise
            Claim under the Kentucky Constitution. .................................................. 11

        4.  OFCC is Likely to Succeed on the Merits of Its Claim under the
            Kentucky Religious Freedom Act. ............................................................ 11

    B.  Enforcement of the Order Will Inflict Irreparable Injury on OFCC if the
        TRO is Not Issued. ............................................................................................ 13

    C.  A TRO Would Not Cause Substantial Harm to Others. ....................................... 14

    D.  The Public Interest in Protecting the Constitutional Right to Free Exercise
        of Religion Requires Entry of a TRO. ................................................................ 15

IV. Conclusion ............................................................................................................... 15

i

Plaintiff On Fire Christian Center, Inc. ("OFCC" or the "Church") moves for a temporary restraining order, and in support thereof, states as follows:[1]

## I.    Introduction

For hundreds of years, people have come to America in a quest for religious freedom. Stretching back to the formation of colonies like Pennsylvania and Rhode Island, where citizens could practice religion in a way that would not be impeded by the government, this basic freedom that was sought by so many colonists was subsequently enshrined in the constitutions of the states and, most importantly, in the First Amendment to the United States Constitution.  "Congress shall make no law respecting the establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amend i.

Just before one of the holiest days on the Christian calendar, Defendants Mayor Greg Fischer and the City of Louisville (collectively, "Defendants") announced what would previously have been unthinkable in a nation like the United States—that they were prohibiting all church worship gatherings in the city.  This mayoral ban is backed by threats of potential criminal penalties, including arrest, and an Orwellian invitation to the public to snitch on religious adherents who dare celebrate Easter worship services in person.  The purported justification for this astounding power grab is the COVID-19 pandemic, despite the fact that OFCC intends to conduct its Easter Sunday service in a drive-in format that adheres to the Centers for Disease Control and Prevention ("CDC") and Kentucky Cabinet for Health and Family Services guidelines on social distancing and safe gatherings.  At the same time, the Mayor permits drive-in restaurant pick-ups to continue unabated.  Retail shopping centers are likewise permitted to continue their operations

---

[1] OFCC incorporates and adopts by reference each and every allegation in its Original Complaint.

with cars gathering in their parking lots and citizens wandering the parking lots and aisles of those stores.

Defendants' targeting of religious adherents from gathering in a manner consistent with governmental social distancing guidelines, while permitting similar (and at times even more intimate) social interaction to continue unabated in retail and commercial establishments, flies in the face of the First Amendment of the U.S. Constitution, Sections 1 and 5 of the Kentucky Constitution, and the Kentucky Religious Freedom Act.  A temporary restraining order is thus proper to protect Plaintiff's religious freedom.  Without such, OFCC will forever lose its ability to have celebrated Easter Sunday 2020 in accordance with its sincerely held religious beliefs.  A temporary restraining order is appropriate because OFCC is likely to succeed on the merits since Defendants' conduct clearly violates the First Amendment of the U.S. Constitution, Sections 1 and 5 of the Kentucky Constitution, and the Kentucky Religious Freedom Act; it would suffer irreparable injury by its constitutional rights being deprived; holding a drive-in church service would not cause harm to anyone because it would comport with the CDC guidelines on such gatherings; and the public interest weighs in favor of protecting constitutional rights.

OFCC respectfully requests that this Court grant a temporary restraining order so it can freely exercise its religion on this important religious holiday.

## II.      Factual Background

**A.      Easter is one of the most important celebrations for Christians**

Easter is among the most important of holidays on the Christian calendar.  BBC, *Religions: Easter*, https://www.bbc.co.uk/religion/religions/christianity/holydays/easter.shtml ("Easter is the most important Christian festival.  It celebrates Jesus Christ's resurrection from the dead, three days after he was executed by crucifixion.").  In the Christian faith, Easter is a

celebration of the physical resurrection of Jesus Christ from the dead on the Sunday morning

following his crucifixion.  *See Easter*, *Cambridge English Dictionary* ("Christian religious

holiday to celebrate Jesus Christ's return to life after he was killed.").

For more than 2,000 years, Christians have gathered physically each Sunday throughout

the year in observance of that event, and the physical gathering of the church is central to that

celebration.  Indeed, the Greek word translated "church" in our English versions of the Christian

scriptures is the word "ekklesia," which literally means "assembly."  A.T. Robertson, A

Grammar of the Greek New Testament in the Light of Historical Research (3d ed.

1919).  The bodily assembly of the church on Easter Sunday each year to celebrate in a special

way Christ's bodily resurrection is of particular importance and significance for Christians.

**B.**     **Gathering on Easter is critical for the OFCC congregation.**

OFCC is a Protestant Christian church in Louisville, Kentucky, led by Chuck Salvo, Lead

Pastor.  As "a ministry dedicated to awakening a generation," prioritizing "God's presence and

His purpose for our lives,"  the Church has "engage[d] thousands of people each month with the

transforming power of the gospel and encourages the rebuilding of the broken down walls of

biblical truth."  On Fire Christian Center, *About Us*, https://www.chucksalvo.net/about-us (last

accessed April 9, 2020).

*Gathering* as a church is of utmost importance to OFCC.  The Church "believe[s] building

relationships with each other is essential to [their] growth as Christians."  On Fire Christian

Church, *Main Page*, https://www.chucksalvo.net/ (last accessed April 9, 2020).  OFCC believes

that a central part of building relationships is worshiping in the same physical space.  Indeed, the

Christian scriptures exhort that believers "not neglect[t] to meet together."  Hebrews 10:25 (ESV).

OFCC and its members have a sincerely held religious belief that physical corporate gathering of

believers each Sunday, especially on Easter Sunday, is a central element of religious worship commanded by the Lord.  *See* Ex. A, Affidavit of Chuck Salvo ¶ 7.

The Church has been hosting drive-in church services in its parking lot for several weeks consistent with CDC guidelines.  Difficulties posed by the current outbreak have only inspired the diverse community of OFCC to "join together in unity to share the hope and love of Jesus Christ to [their] neighbors, friends & families."   OFCC: Main Page, https://www.chucksalvo.net/ (last accessed April 9, 2020).  Indeed, members of the Church feel that they need the support of each other and their faith now more so than ever.  In the words of Wendy Reesor, a member of the Church, "it's just really great that [the Church] get[s] to fellowship and come together at a time like this.  It helps with the isolation […] It's really confusing for a lot of people and we need hope." Alton Strupp, *This Louisville Church Is Working Around Social Distancing With Drive-In Service*, COURIER       JOURNAL       (March       29,       2020),       https://www.courier-journal.com/story/news/2020/03/29/louisville-church-hosts-drive-in-service-amid-coronavirus/2935950001/.

To address the challenges posed by the COVID-19 outbreak, OFCC is committed to physically gathering in a manner consistent with guidelines issued by the CDC for community and faith-based organizations to ensure the safety and well-being of members and congregants.  *See* Centers for Disease Control, *Interim Guidance for Administrators and Leaders of Community- and Faith- Based Organizations to Plan, Prepare, and Respond to Coronavirus Disease 2019 (COVID-19)*,    https://www.cdc.gov/coronavirus/2019-ncov/community/organizations/guidance-community-faith-organizations.html; Ex. A, Affidavit of Chuck Salvo ¶ 5.

As with other communities of Christian faith around the country, Easter has a special and significant meaning to OFCC.  The Church has been planning for Resurrection Sunday for weeks,

anticipating the service as an opportunity to "[a]sk God what He wants [the Church] to do this year to celebrate Him on Jesus' resurrection day."   On Fire Christian Church, *Events*, https://www.chucksalvo.net/events (last accessed April 9, 2020).  Consistent with CDC guidelines, at OFCC's planned drive-in church service this Easter Sunday, cars will park six feet apart, and all congregants will remain in their cars with windows no more than half open for the entirety of the service.  *See* Ex. A, Affidavit of Chuck Salvo ¶ 6.  The pastor will preach outside with speakers. *Id.*  Multiple security personnel will be present to ensure proper spacing between cars and orderly compliance with all guidelines.  *Id.*  Other than security personnel, the only persons not restricted to a car will be the pastor and a videographer, both of whom will remain a safe distance from the parked cars.  *Id.*  This will provide strong protection for the health of the church community and others by preventing potential contact and ensuring against the transmission of disease through the service.  *Id.*

## C.    Prohibition of Drive-In Church Services

On March 6, 2020, Andrew Beshear, in his official capacity as the Governor of Kentucky, signed Executive Order 2020-215, instituting a state of emergency due to the COVID-19 outbreak the merits in this case.  The Kentucky Cabinet for Health and Family Services, a branch of Governor Beshear's administration, issued an order on March 19, 2020 in connection with this state of emergency, prohibiting mass gatherings due to the COVID-19 outbreak.  *See* Ex. B.  The term "mass gatherings" was defined to include "any event or convening that brings together groups of individuals, including, but not limited to, community, civic, public, leisure, faith-based, or sporting events; parades; concerts; festivals; conventions; fundraisers; and similar activities."  *Id.* at 1.  Excluded from the definition of "mass gatherings" were "normal operations at airports, bus and train stations, medical facilities, libraries, *shopping malls and centers*, or other spaces where

persons may be in transit," as well as "typical office environments, factories, or *retail or grocery stores where large numbers of people are present*, but maintain appropriate social distancing." *Id.* (emphasis added). The March 19, 2020 order was promulgated pursuant to the Cabinet for Health and Family Services' authority under several statutes, including KRS Chapter 39A. *Id.* Ky. Rev. Stat. § 39A.190 gives police officers authority to "arrest without a warrant any person violating or attempting to violate in the officer's presence any order or administrative regulation made pursuant to" KRS Chapter 39A.

During an April 6, 2020 press conference, Governor Beshear discussed "drive in church services" and the general "rules that [officials] need to see in place" for such services. As a general matter, Governor Beshear stated: "Make sure if you're going to do this … nobody gets out of the car, cars are six feet apart, you're not passing things in the car … Please follow those rules. We want to at least have the opportunity to do this type of thing." *See* Andy Beshear, *Gov. Beshear on drive-in church services: 'Stay inside your car,'* LEXINGTON HERALD-LEDGER (Apr. 6, 2020) https://www.kentucky.com/news/state/kentucky/article241816076.html (embedded video).

Mayor Fischer has been engaged in a public campaign to intimidate churches and their congregants from hosting or attending drive-in church services for Easter 2020. As he stated most recently on April 9, 2020, recorded by video, "We are not allowing churches to gather either in person or in any kind of drive-through capacity. Ok so, if you are a church or you are a church-going member and you do that, you're in violation of the mandate from the governor, you're in violation of the request from my office and city government to not do that. . . . We're saying no church worshiping, no drive-throughs." *See* Greg Fischer, *Daily COVID-19 Briefing By Louisville Mayor Greg Fischer* (Apr. 9, 2020), https://www.wave3.com/2020/04/09/fischer-confirms-new-cases-more-deaths/ (embedded video). Additionally, Louisville Metro Police has attempted to

intimidate churches from meeting, going so far as to encourage the reporting of social distancing violations, including those by any religious organizations that plan to hold drive-in religious services, to a city-run telephone number.  Ex. C (Savannah Fadens & Ben Tobin, *Church vs. State: Can Kentucky Governments Block Religious Gatherings Amid COVID-19?*, LOUISVILLE COURIER J. (Apr. 9, 2020) https://www.courier-journal.com/story/news/2020/04/09/coronavirus-kentucky-can-beshear-block-religious-gatherings/2972356001/ (last accessed April 9, 2020)).

In short, Mayor Fischer has declared that drive-in church services would violate state and local laws and orders and has threatened participating persons and entities with penalties, such as "arrest without a warrant" for violating the March 19, 2020 order under Ky. Rev. Stat. § 39A.190. Under Mayor Fischer's statements, the mandate is violated even if a congregation abides by the social distancing and hygiene guidelines provided by the CDC and the Kentucky Cabinet for Health and Family Services.  Mayor Fischer's directive directly targets religious gatherings, goes beyond the executive order of Governor Beshear, and is in contravention of the federal Constitution and the laws and constitution of the Commonwealth of Kentucky.

### III.    Argument and Authorities

In determining whether to grant a temporary restraining order ("TRO"), courts must consider four factors: "(1) whether the movant has a strong likelihood of success on the merits, (2) whether the movant would suffer irreparable injury absent a [TRO], (3) whether granting the [TRO] would cause substantial harm to others, and (4) whether the public interest would be served by granting the [TRO]." *Northeast Ohio Coalition for the Homeless v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006).  When a party seeks injunctive relief on the basis of the potential violation of the First Amendment, "the likelihood of success on the merits often will be the determinative factor." *Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998).  For the reasons

explained below, OFCC satisfies each of these requirements and is accordingly entitled to the requested relief.

**A.    OFCC is Substantially Likely to Succeed on the Merits of its Free Exercise Claim, its Freedom of Assembly Claim, and its claims under the Kentucky Constitution and KFRA.**

*1.    OFCC is Likely to Succeed on the Merits of Its Free Exercise Claim under the U.S. Constitution.*

Defendants' blanket prohibition on drive-in religious services significantly burdens OFCC's exercise of religion.  The prohibition is not neutral nor generally applicable, and it is not narrowly tailored to achieve the legitimate public health and safety interests of the government. Thus, the prohibition violates OFCC's First Amendment right to free exercise of religion.

The First Amendment protects the "free exercise" of religion, and fundamental to this protection is the right to gather and worship.  *See W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 638 (1943) ("The very purpose of a Bill of Rights was to withdraw certain subjects from the vicissitudes of political controversy, to place them beyond the reach of majorities and officials and to establish them as legal principles to be applied by the courts … [such as the] freedom of worship and assembly.").  This protection was incorporated against the states in *Cantwell v. Connecticut*, 310 U.S. 296 (1940).

Because of this fundamental protection, "a law burdening religious practice that is not neutral or not of general application must undergo the most rigorous of scrutiny."  *Church of the Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520, 546 (1993).  The requirements to satisfy this scrutiny are so high that the government action will only survive this standard in rare cases and the government bears the burden of meeting this exceptionally demanding standard.  *Id*. Defendants' prohibition on drive-in religious services and the threatened penalties for holding such

services clearly impose a substantial burden on OFCC's religious exercise.  This action would thus need to pass strict scrutiny unless it is both neutral and generally applicable.  It is neither.

"[T]he minimum requirement of neutrality is that a law not discriminate on its face."  *Id.* at 533.  However, Defendants' restriction specifically and explicitly prohibits drive-in religious gatherings only.  Drive-in restaurants are permitted to continue.  Cars may gather in the parking lots of shopping malls and retail establishment without limit.  Indeed, shoppers may roam the aisles of retail establishments with no barriers between them so long as they maintain a distance of six feet from one another.  Rather than applying the same restrictions to other entities and activities, Defendants have specifically targeted his proscription to drive-in church services.  Even if congregants remain in the protection of their cars which are themselves six feet away from one another, Defendants have banned Easter drive-in services.  Because the prohibition discriminates on its face, it is not neutral.

Relatedly, government action is not generally applicable if its prohibitions substantially underinclude non-religiously motivated conduct that might endanger the same governmental interest that the law is designed to protect.  *Id.* at 542-46.  Defendants' prohibition of drive-in church services in the name of social distancing is not generally applicable.  There are numerous exceptions to the March 19, 2020 order that Defendants are not cracking down on, such as establishments like shopping malls, where far more people come into closer contact with less oversight.

Government actions that burden religious practice and are either not neutral or not generally applicable must satisfy a compelling governmental interest and be narrowly tailored to achieve that end.  *Id.* at 546.  Here, the government's prohibition cannot be "narrowly tailored" because the ban on drive-in religious services is absolute.  Less restrictive means of achieving the

legitimate public safety interests are clearly possible, as OFCC has already conducted drive-in services satisfying these requirements in the past weeks.  Social distancing and public health guidelines promulgated by the CDC and the Kentucky Cabinet are designed to limit the spread of COVID-19.  For this Easter service, cars will park six feet apart. Congregants will remain in their cars with windows no more than halfway down.  Security personnel will be on-site to ensure compliance with these necessary measures.  But despite the ability and willingness to take these precautions, Defendants' prohibition does not provide any exception for religious services, like Plaintiff's, where these guidelines would be carefully followed to satisfy the compelling public health interests at issue.

By not allowing Plaintiff's drive-in service, even when modified to comply with the relevant public health guidelines, Defendants have not narrowly tailored their action to the compelling interest, and thus violate Plaintiff's Constitutional right to free exercise of its religion.

2.      *OFCC is Likely to Succeed on the Merits of Its Freedom of Assembly Claim under the U.S. Constitution.*

Defendants' blanket prohibition on drive-in religious services also significantly burdens OFCC's freedom of assembly.  The prohibition is not narrowly tailored to achieve the legitimate public health and safety interests of the government.  Thus, the prohibition violates OFCC's First Amendment right to peaceably assemble.

The First Amendment of the U.S. Constitution protects the "right of the people peaceably to assemble."  The Freedom of Assembly Clause was incorporated against the states in *De Jonge v. Oregon*, 299 U.S. 353 (1937).  "The right of free speech, the right to teach, and the right of assembly are, of course, fundamental rights."  *Whitney v. California*, 274 U.S. 357, 373 (1927). When a government practice restricts fundamental rights, it is subject to "strict scrutiny" and can be justified only if it furthers a compelling government purpose and, even then, only if no less

restrictive alternative is available. *See, e.g.*, *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 16-17 (1973); *Dunn v. Blumstein*, 405 U.S. 330 (1972).

Here, as discussed above, the government's prohibition cannot satisfy strict scrutiny because less restrictive alternatives of achieving the legitimate public safety interests are clearly possible, as OFCC has already conducted drive-in services satisfying these requirements in the past weeks. Social distancing and public health guidelines promulgated by the CDC and the Kentucky Cabinet are designed to limit the spread of COVID-19. By not allowing Plaintiff's drive-in service, even when modified to comply with the relevant public health guidelines, Defendants have not narrowly tailored their action to the compelling interest, and thus violate Plaintiff's Constitutional right to peaceably assemble.

3.   *OFCC is Likely to Succeed on the Merits of Its Free Exercise Claim under the Kentucky Constitution.*

Sections 1 and 5 of the Kentucky Constitution provide the right to "worship" and the right to "religious freedom." Ky. Const. §§ 1, 5. In *Gingerich v. Commonwealth*, 382 S.W.3d 835, 839 (Ky. 2012), the Supreme Court of Kentucky held that these free exercise of religion protections afforded by the Kentucky Constitution offer the same protection that the federal Constitution provides. Thus, for the same reasons that the prohibition of drive-in church services would violate the free exercise clause of the United States Constitution, it would violate the free exercise sections of the Kentucky Constitution. *See supra* Section III.A.1.

4.   *OFCC is Likely to Succeed on the Merits of Its Claim under the Kentucky Religious Freedom Act.*

The Kentucky Religious Freedom Act, Ky. Rev. Stat. § 446.350 ("KRFA"), states that "[g]overnment shall not substantially burden a person's freedom of religion" unless the government "proves by clear and convincing evidence that it has a compelling governmental

interest in infringing the specific act or refusal to act and has used the least restrictive means to further that interest." Ky. Rev. Stat. § 446.350. The KRFA defines a "burden" as including "indirect burdens such as withholding benefits, assessing penalties, or an exclusion from programs or access to facilities." *Id.* The KFRA is "equivalent" to the federal Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb *et seq. Moorish Sci. Temple of Am., Inc. v. Thompson*, No. 2014-CA-001080-MR, 2016 WL 1403495, at *4 (Ky. Ct. App. Apr. 8, 2016). Like RFRA, the KFRA "is a codification by the legislature of the strict scrutiny test applied in case law." *Id.* Because the statutes are substantially similar, cases interpreting RFRA are instructive in interpreting the KFRA.

RFRA broadly defines the "exercise of religion" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000bb–2(4) (citing 42 U.S.C. § 2000cc–5). In *Burwell v. Hobby Lobby Stores, Inc.*, the United States Supreme Court stated that the exercise of religion involves "not only belief and profession but the performance of (or abstention from) physical acts that are engaged in for religious reason." 573 U.S. 682, 710 (2014) (quoting *Emp't Div., Dep't of Human Res. of Oregon v. Smith*, 494 U.S. 872, 877 (1990)). A compelling interest includes "only those interests of the highest order." *Wisconsin v. Yoder*, 406 U.S. 205, 215 (1972). And the least-restrictive-means standard is "exceptionally demanding." *Hobby Lobby*, 573 U.S. at 728. To pass the least-restrictive-means test, the government must show "that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion" by the religious objector. *Id.*

By denying Plaintiff the ability to hold a drive-in church service, Defendants are in violation of the KFRA. Defendants are clearly creating a substantial burden on Plaintiff's freedom of religion by prohibiting drive-in church services under the threat of potential arrest. *See* Ky.

Rev. Stat. § 446.350 (defining "burden" as including "indirect burdens" such as "withholding benefits, assessing penalties, or an exclusion from programs or access to facilities"). Since there is a clear substantial burden, Defendants would have to prove *by clear and convincing evidence* that they have a compelling governmental interest in infringing drive-in service and have used the least restrictive means to further than interest  Assuming *arguendo* that Defendants have a compelling government interest in protecting public health and safety during a state of emergency, Defendants cannot meet the least-restrictive-means test. The CDC's social distancing guidelines are appropriate to limit the spread of COVID-19. Imposing more restrictive requirements that target only churches and their drive-in services is not the least restrictive means of achieving Defendants' public safety goal. Thus, Defendants would fail the "extremely demanding" least-restrictive-means test and OFCC would be likely to succeed on its KFRA claim.

*     *     *

For the foregoing reasons, Defendants' directive violates the United States' constitutional guarantees of free exercise of religion and freedom of assembly, as well as the Kentucky Constitution's protections of religion and the Kentucky Religious Freedom Act. As a result, OFCC has established a substantial likelihood of success on the merits of the claims set out in its Original Complaint.

**B.     Enforcement of the Order Will Inflict Irreparable Injury on OFCC if the TRO is Not Issued.**

The Supreme Court "has unequivocally admonished that even minimal infringement upon First Amendment values constitutes irreparable injury sufficient to justify injunctive relief." *Newsom v. Norris*, 888 F.2d 371, 378 (6th Cir. 1989). Indeed, the Court held in *Elrod v. Burns* that the "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." 427 U.S. 347, 373 (1976). The Kentucky Constitution and the

13

Kentucky Religious Freedom Act protect the same types of rights that the Free Exercise Clause protects, and for the same reasons, an infringement of those rights also constitutes irreparable harm. *See, e.g. O Centro Espirita Beneficiente Uniao do Vegetal v. Aschcroft*, 389 F.3d 973, 995 (10th Cir. 2004) (en banc) (per curiam) ("[The plaintiff] would certainly suffer an irreparable harm, assuming of course that it is likely to succeed on the merits of its RFRA claim."), *sub nom. Gonzales v. O Centro Espirita Beneficiente Uniao do Vegetal*, 546 U.S. 418 (2006).

Defendants' threatened actions will deny OFCC and its members the right to practice their faith as they feel compelled to practice. More specifically, without a TRO, OFCC and its members will lose the right to celebrate one of the holiest days of the year, Easter Sunday, according to their sincerely-held religious beliefs. Defendants' actions thus prohibit OFCC from carrying out its religious mission. This restriction on OFCC's religious practices constitutes immediate and irreparable harm to the Church.

**C.   A TRO Would Not Cause Substantial Harm to Others.**

A TRO would not cause substantial harm to others because OFCC is committed to physically gathering for Easter in a manner consistent with guidelines issued by the CDC for community and faith-based organizations to ensure the safety and well-being of members and congregants. The Church has been hosting drive-in church services in its parking lot for several weeks consistent with CDC guidelines and any future drive-in church services would follow the same format. In order to ensure the physical safety of congregants, cars will park six feet apart, and all congregants will remain in their cars with windows no more than half open for the entirety of the service. Multiple security personnel will be present to ensure proper spacing between cars and orderly compliance with all guidelines. Other than security, the only persons not restricted to a car will be the pastor and a videographer, both of whom will remain a safe distance from the

14

parked cars.  This will provide strong protection for the health of the church community and others and err on the side of caution to prevent potential contact and ensure the transmission of illness is not facilitated by the service.  Drive-in church services at OFCC thus will not create substantial harm to anyone.

And, generally, the "substantial harm to others" prong "requires an examination of the balance of hardships between the parties." *Indus. Automation, Inc. v. Indus. Automation*, 2015 WL 3756184, at *5 (W.D. Ky. June 16, 2015).  "[T]he fact that a case raises serious First Amendment questions compels a finding that there exists the potential for irreparable injury, or that at the very least the balance of hardships tips sharply in" favor of the party whose First Amendment rights are being violated.  *Sammartano v. First Judicial Dist. Court*, 303 F.3d 959, 973 (9th Cir. 2002) (internal quotation marks omitted).  Here, Defendants' actions threaten to bar OFCC's drive-in service on Easter Sunday.  The balance of hardships thus tips sharply in favor of OFCC.

## D.     The Public Interest in Protecting the Constitutional Right to Free Exercise of Religion Requires Entry of a TRO.

Finally, the public interest is well-served by a TRO that prevents Defendants from unlawfully burdening the exercise of religion.  As the Sixth Circuit has observed, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Connection Distrib.*, 154 F.3d at 288.

## IV.     Conclusion

For all the foregoing reasons, Plaintiff's motion for a temporary restraining order and/or preliminary injunction should be granted.

Dated: April 10, 2020

Respectfully submitted,

*/s/ J. Brooken Smith*
J. Brooken Smith
Michael G. Swansburg, Jr.
SWANSBURG & SMITH, PLLC
291 N. Hubbards Lane, Suite 172
Box 321
Louisville, Kentucky 40207
Phone: (502) 805-5960
jbs@swansburgandsmith.com
mgs@swansburgandsmith.com

*/s/ Matthew T. Martens*
Matthew T. Martens (*pro hac vice forthcoming*)
Kevin Gallagher (*pro hac vice forthcoming*)
Hyun-Soo Lim (*pro hac vice forthcoming*)
Andrew Miller (*pro hac vice forthcoming*)
WILMER CUTLER PICKERING HALE AND
DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
Tel: (202) 663-6000
Fax: (202) 663-6363
Matthew.martens@wilmerhale.com

*/s/ Hiram S. Sasser, III*
Hiram S. Sasser, III (*pro hac vice forthcoming*)
Roger Byron (*pro hac vice forthcoming*)
First Liberty Institute
2001 W Plano Pkwy
Plano, TX 75075
Tel: (972) 941-4444
Fax: (972) 941-4457
hsasser@firstliberty.org

*Attorneys for Plaintiff On Fire Christian Center,
Inc.*

## <u>CERTIFICATE OF COUNSEL PURSUANT TO FED. R. CIV. P. 65(b)</u>

On April 9, 2020 at approximately 11:40 am E.T., attorneys for On Fire Christian Center, Inc. sent a letter to Defendant Mayor Greg Fischer requesting that he retract his recent directives concerning drive-in church services and laying out potential claims under the First Amendment to the U.S. Constitution, the Kentucky Constitution, and the Kentucky Religious Freedom Act.  The letter asked for a response by 4:00 pm E.T. that day so that OFCC could consider its next steps given the impending Easter holiday.  Neither the Mayor nor another City of Louisville employee ever responded.  OFCC's attorneys thus attempted to give notice of its claims to Defendants. Given that this is the last business day before the Easter holiday, further notice should not be required.

*/s/ J. Brooken Smith* _____
J. Brooken Smith