IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CASE NO: 3:20-CV-00264-JRW

*Electronically filed*

ON FIRE CHRISTIAN CENTER, INC.                                    PLAINTIFF

v.

GREG FISCHER, in his official capacity as Mayor, and
LOUISVILLE/JEFFERSON COUNTY METRO GOVERNMENT, ET AL.      DEFENDANTS

**DEFENDANTS' MOTION TO DISSOLVE TEMPORARY RESTRAINING ORDER
AND RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY
INJUNCTION**

The Defendants, Greg Fischer, in his official capacity as Mayor of Louisville/Jefferson County Metro Government ("Mayor"), and Louisville/Jefferson County Metro Government ("Louisville Metro" or "Metro") (collectively "Defendants"), by counsel, for their Motion to Dissolve Temporary Restraining Order and Response in Opposition to Plaintiff's Motion for Preliminary Injunction, state as follows:

## I. INTRODUCTION

Plaintiff, On Fire Christian Center, Inc. ("On Fire"), moved on April 10, 2020 for a preliminary injunction seeking relief from Defendants on the possibility that Plaintiff, or the members of its congregation, will be prevented from holding drive-in church services on Easter Sunday, April 12, 2020. Plaintiff by its motion sought to enjoin the enforcement of Mayor Fischer's and Louisville Metro's reasonable measures to prevent the spread of COVID-19 during a state and national emergency. Plaintiff alleges these measures amount to violations of the Free Exercise Clause of the First Amendment to the U.S. Constitution and violations under the Kentucky Religious Freedom Act, and other alleged violations. Plaintiff fails to identify any

1

executive order of Mayor Fischer to support its allegations, but rather reference the Mayor's public comments urging the religious community not to hold drive-in church services.

Plaintiff's affidavit from Chuck Salvo, Pastor of On Fire Christian Center, upon which this Court relied, was misleading and inaccurate. The attached photographs published in the Courier Journal and contained on-line establish that On Fire Christian Center's previous drive-in services have violated the Centers for Disease Control and Prevention's interim guidance with respect to faith-based organizations. *See* Photographs attached as compiled Exhibit 1. In fact, these photos show the exact dangers of these drive-in services the Mayor hoped to prevent with his public urging on April 9, 2020. The congregants of On Fire gathering within six feet of each other, elbow bumping, dangerously hanging out of car windows, and passing the collection basket. *Id*.

The Court should dissolve its Temporary Restraining Order pursuant to Fed. R. Civ. P. 59(e) or other rule amending its order. Plaintiff's counsel was notified twice of the Defendants' intention to respond to the Motion for Temporary Restraining Order. Defendants are disappointed with the Court's failure to provide adequate opportunity for a response to the motion for Temporary Restraining Order.

Plaintiff is not likely to succeed on the merits of its Motion for Preliminary Injunction because courts have long recognized a local government's authority to regulate the public welfare and there was no order from the Mayor to enjoin. The Mayor is authorized and mandated under the law to take steps in a public crisis to mitigate potential and likely harm to the community. The Mayor's oral statements are consistent with enforcement of the Cabinet for Health and Family Services March 19 Order that prohibits mass gatherings.

Preliminary injunctions are extraordinary and drastic remedies. The Court should not have entered an order granting a temporary restraining order without allowing Defendants' known legal

counsel an opportunity to respond to Plaintiff's motion.  Plaintiff has failed to carry its burden of justifying relief.  The balance of harm of the community's health and public interest weighs in favor of denying preliminary injunctive relief, and the Court should dissolve its temporary injunction order and allow Mayor Fischer to combat the spread of COVID-19.

## II. FACTUAL BACKGROUND

### 1.  THERE IS NO ORDER FROM MAYOR FISCHER TO ENJOIN.

Plaintiff's Motion did not contest that mass gatherings are prohibited by the March 19, 2020 Order ("March 19 Order") that was issued by the Cabinet for Health and Family Services ("Cabinet")[1] and signed by the Governor's designee, Eric Friedlander.[2]  Plaintiff did not contest the fact that faith-based services are a mass gathering subject to the prohibition.  Plaintiff did not contest the authority of the Cabinet and Governor Beshear to pass such an order prohibiting mass gatherings.

Plaintiff solely relies on an April 6, 2020 press conference with Governor Beshear to establish their right to conduct a drive-in church service.  *See* Andy Beshear, *Gov. Beshear on drive-in church services: 'Stay inside your car,'* Lexington Herald-Ledger (Apr. 6, 2020).  The press conference does not authorize any drive-in church services but provides guidance to ensure

---

[1] See Ky. Rev. Stat. § 214.020 (authorizing the Cabinet "to adopt regulations and take other action to prevent the spread of disease"); See also Ky. Rev. Stat. § 211.025 (mandating the Cabinet "administer all provisions of law relating to public health"); See also Ky. Rev. Stat. § 211.180 (directing the Cabinet to establish and execute policies, plans and programs relating to the control of communicable disease); See also Ky. Admin. Reg. Title 902 § 02:030 (instructing the Cabinet to establish and maintain "measures as required by law or by administrative regulations of the Cabinet for Human Resources relating to communicable disease control");  See also Ky. Admin. Reg. Title 902 § 02:050 (mandating the Cabinet to take "control procedures necessary to insure cessation of transmission" of any communicable disease on public or private property); See generally Ky. Rev. Stat. Chapters 194A, 211, 212 and 214; See generally Ky. Admin. Reg. Title 902.

[2] Governor Beshear's March 25th Executive Order references and reaffirms the March 19 Order.

3

such a drive-in service may be held without further enforcement of the ban of mass gatherings. However, of significant importance here, Governor Beshear explicitly states in this very press conference that due to Louisville's density, the Governor fully supports the Mayor's recommendation to cancel drive-in, faith-based services in Louisville. Only in areas that are less dense than Louisville does the Governor extend the work-around guidance on holding a drive-in service. *See* Exhibit 2, copy of the March 19, 2020 Order, which forbids mass gatherings, including faith-based services.

One of Mayor Fischer's major responsibilities during Kentucky's State of Emergency is to "**enforce all laws and administrative regulations relating to disaster and emergency response and to direct all local disaster and emergency response forces and operations in the affected county, city, urban-county, or charter county**[.]" KRS 39A.100(2)(a)(emphasis added). During the State of Emergency, Louisville Metro devoted its 311-phone number, a number otherwise used for complaints about potholes and other government related matters, to receive reports from the community of alleged violations of COVID-19 orders. Louisville Metro's Health Department developed a method to track and investigate the allegations related to violations of mass gatherings, non-essential business openings, and failure to practice social distancing, to name a few. These calls have resulted in the issuance of sixteen Notice-Orders for the cessation of violations and no criminal citations, even though its permissible enforcement under KRS 39A.180. *See* Exhibits 3 and 4 for copies of the Notice-Orders of violation from the Health Department and an Affidavit from Louisville Metro Police Department Chief, Steve Conrad, who confirms that no criminal citations have been issued during the State of Emergency for violation of COVID-19 related orders. None of the Notice-Orders have been against the Plaintiff even though, according to Pastor Chuck Salvo's affidavit, paragraph 9, On Fire has been holding services since the March 19 Order.

Despite the Mayor's powers to enforce the March 19 Order and to issue his own more stringent order under KRS 39B.070(2), he did not do so.  Instead, Mayor Fischer took to the radio and a live-stream internet program to plead with the community not to engage in mass gatherings, including drive-in church services.  The Plaintiff offers nothing but the strong statements from a passionate and reasoned Mayor to support its misplaced allegation that Louisville Metro has infringed on its constitutional rights.

### 2.   THE MAYOR'S COMMENTS ARE AND WERE APPROPRIATE UNDER KENTUCKY LAW.

Mayor Fischer holds non-scripted daily briefings with the public to share the latest COVID-19 information and to encourage the community to comply with government efforts to combat the virus.  His briefings occur at or around 4 pm every day and typically last an hour.  Mayor Fischer invites guests and often holds panel discussions on various topics related to the COVID-19 crisis and the on-going State of Emergency.  These daily briefings began from Mayor Fischer's home when he was self-quarantined with his wife after she tested positive for COVID-19.  Mayor Fischer uses his laptop computer as the recording device.  The daily briefings are hosted on Cisco WebEx and then broadcasted on Facebook Live and on Metro TV, with a sign language interpreter.  Other media stations simultaneously live-stream his briefing through their websites and/or other media mediums.

During the 4 pm briefing on April 9, 2020, Mayor Fisher stated to the public that individuals who attend church services in person or who attend drive-in services would be in violation of the March 19 Order.  The Mayor's comments were made to strongly discourage churches from holding in-person services on Easter Sunday.  While sentences of his non-scripted commentary have been taken out of context and quoted by the Plaintiff to allege government infringement on its constitutional rights, a review of the entire conversation is helpful to understand

that his remarks were made simply to encourage folks to stay home.  Here are Mayor Fischer's

material comments from the April 9 briefing, which begins with about 38:28 left in the recording:

> And what we do know, is the more we stay home, the less the chance
> for the virus to spread.  That's why we know social distancing is
> working.  That's why these spikes are coming down.  So please stay
> home today, tomorrow, and every day. And what I have to say that,
> too, especially now, this very special week we are in, the Holy Week
> for Christians.  Passover started last night for our Jewish brothers
> and sisters.  And so this is a really hard time, right now.  People,
> with their Easter celebrations – there are so many family traditions
> tied up with Our Easter traditions.  People are out celebrating.  They
> are worshipping together, having brunches.  Used to having Easter
> egg hunts.   Used  to  having  all  your  family  members
> together.  Having good times.  Loving on our family members; and
> seeing that family member that you hadn't seen in a year or so and
> just catching up on what's going on with each other. I understand
> that this is really difficult for people right now.  We are asking them
> to keep the faith.  And what we are doing with the community social
> distancing,  because  its  working.   So  we  really  have  to  do
> that.  Another call out to all of our houses of worship.  We are saying
> that you cannot have services.  We are not allowing drive-thru
> services as well.  We are doing all of this because we want to save
> the lives your congregants, of your flock.  All of our great faith
> traditions, all of our faith traditions emphasize community, love one
> another.   Love  one  another,  right  now,  we  are  social
> distancing.  Cause when we are together, it can happen in a church,
> the likelihood of spreading the virus goes way up.  One of the reports
> we are getting from national experts is that people in choirs have
> been spreading the virus because of the vocalizations required when
> you  are  singing,  and  the  virus  is  going  out  and  getting  on
> folks.  There's just so many reasons not to do this, and not to get
> together.  And worship from our homes, worship virtually, and get
> together  next  year.  I  understand  how  important  faith  is  to
> everybody.  And I understand we believe we need to get together
> and  celebrate, and  worship.  I  understand that.  But we have to
> understand the science as well.  The virus doesn't care about faith,
> or family members or anybody.  All it wants to do is infect people
> and person to person to person.  So I would suggest, the best way
> that you can follow the Golden Rule that's all in our faith traditions
> by loving one another is by staying away from each other.  And we
> ask for not to go to church services, and for anybody that is a leader
> of a house of worship we request that you not to hold your church
> services as well.  I can say that 99.9998 percent or whatever huge
> number it is, people are complying with it.  So for those that are not,

let's reconsider, stay home, stay safe, show your love that way. Worship virtually, visit with your family virtually as well. We just don't want any kind of crowds coming together because it increases the odds of this virus passing from person to person. So for the good of our loved ones, and our community, no in-person or drive thru worship services, and or any holiday gatherings, including family gatherings, this weekend. Connect online, stay home, as much as possible social distancing. If you have to go out for essential business wear a mask. The mask is so that you don't breathe on other people. People without symptoms are spreading the disease, asymptomatic, but if you put a mask on, and you are asymptomatic, you have less of a chance to spread the disease to other people.

(Around 3:25 left)
We are not allowing churches to gather, either in-person or any kind of drive-thru capacity. OK, so, if you are a church or are a church-going member, and you do that, you are in violation of a mandate from the Governor, you are in violation of the request from my office and city government to not do that. No that's the last thing – we are saying no. No church worshipping, no drive-thrus. Why – we want to save your life, and the lives of other people in our community. It distresses us greatly to have to do this during Holy Week. Easter is about rebirth. The virus is not interested in rebirth. OK? Virus is interested in sickness and death. So we have to deny the virus. The way we do that is staying away. That's really how we bring our faith traditions alive. Loving one another by practicing social distancing. Staying home. We know that works. OK, everybody so please help us out with that.

(Around :54 left)
Try to channel that energy that you have to be with other people and your commitment to your faith tradition, to be faithful to that by staying separate from people, and showing your love to each other that way. Focus it on your internal self. OK, I can't be with other folks, but I'm going to be the best person I can be by staying separate from others.

Facebook at
https://www.facebook.com/MayorGregFischer/videos/582592332359691/ (last visited April 13, 2020).

Mayor Fischer's remarks are a far cry from threatening parishioners with any enforcement action. Instead, these words express serious concerns that in-person, drive-in church services

could further spread the virus through the community.  The Mayor asked churches to keep the faith by staying home, worshipping at home and practicing social distancing so we can save lives. Perhaps our non-lawyer Mayor offended some by telling the community what to do rather than simply pleading with folks to avoid these mass gatherings.   These remarks have been misinterpreted by the Plaintiff and this Court.

The very behavior that Mayor Fischer spoke out about and the reasons for his concern can be seen in the photographs attached as Exhibit 1.  Even through Pastor Chuck Salvo swore the On Fire's drive-in service followed mandatory social distancing, the photos taken by the Courier Journal show otherwise.   These photographs demonstrate the Plaintiff's parishioners closely congregated at past services with folks sharing a collection basket, band members performing without proper distances, and other attendees interacting in ways inconsistent with the March 19 Order.

The Court erred in describing Mayor Fischer's comments on the actions to be taken by Louisville Metro on Easter.  The Court describes them as a threat.  For the Court's knowledge, the purpose of passing out the flyers was for educational purposes.  The flyers referenced the potential dangers incident to gatherings in case a potential attendee was uninformed about the potential consequences to themselves and their family.  The purpose of recording the license plates was to assist the health departments with potentially tracking individuals (and their families) who may test positive to the virus and to then encourage and/or mandate them to self-quarantine for 14 days so as to protect the public at large.

While Mayor Fischer has authority to enforce the March 19 Order more stringently in Louisville, his public discussions do not amount to a written order banning drive-in church services.  Plaintiff filed an action based solely on the passionate pleas of a city's leader during a

public health crisis. Mayor Fischer's statements are in conformity with the March 19 Order and do not violate the Plaintiff's rights under the First Amendment.

### III. APPLICABLE STANDARD OF REVIEW

In determining whether a preliminary injunction should issue a district court must balance four factors: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent the injunction; (3) whether the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of an injunction." *American Civil Liberties Union Fund of Michigan v. Livingston County*, 796 F.3d 636, 642 (6th Cir. 2015), quoting *Bays v. City of Fairborn*, 668 F.3d 814, 818-19 (6th Cir. 2012) (citing *Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007). But in First Amendment cases, "'the crucial inquiry is usually whether the plaintiff has demonstrated a likelihood of success on the merits.'" *Livingston County*, 796 F.3d at 642 (citing and quoting *Hamilton's Bogarts, Inc. v. Michigan*, 501 F.3d 644, 649 (6th Cir. 2007)). This is because the public's interest and any potential harm to the parties or others "largely depend on the constitutionality of the [state action]." *Id*. (quoting *Hamilton's Bogarts*, 501 F.3d at 649); see *Liberty Coins, LLC v. Goodman*, 748 F.3d 682, 689 (6th Cir. 2014), *cert. denied*, ---- U.S. ----, 135 S.Ct. 950, 190 L.Ed.2d 831 (2015) ("[W]hen a party seeks a preliminary injunction on the basis of a potential constitutional violation, 'the likelihood of success on the merits often will be the determinative factor.'" *Livingston County*, 796 F.3d at 642 (quoting *Obama for America v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012))." In addition, "preliminary injunctions are extraordinary and drastic remedies … never awarded as of right." *Livingston County*, 796 F.3d at 642 (quoting *Platt v. Bd. of Comm'rs on Grievance & Discipline of Ohio Supreme* Court, 769 F.3d 447, 453 (6th Cir. 2014)). The party seeking a preliminary injunction

bears the burden of justifying such relief." *Id.* (quoting *McNeilly v. Land*, 684 F.3d 611, 615 (6th Cir. 2012))."

## IV. ARGUMENT

1. THE COURT'S ENTRY OF A TEMPORARY RESTRAINING ORDER WAS IN ERROR AND PLAINTIFFS CANNOT DEMONSTRATE A LIKELIHOOD OF SUCCESS ON THE MERITS. THE TEMPORARY RESTRAINING ORDER SHOULD BE DISSOLVED.

Plaintiffs have failed to show that the Mayor's discouragement of drive-in church services is a constitutional violation. The Mayor's statements were at most an admonition to comply with the March 19 Order prohibiting mass gatherings. The Mayor's statements were not reduced to an executive order, nor codified as an ordinance, even though the Mayor would be well within his authority to take this action. There is no threatened action by the government to enjoin, which raises the question of whether a justiciable controversy exists for which the Plaintiff can seek relief.

The Plaintiff maintains that because it has been conducting drive-in church services, it should remain entitled to conduct such services, as they claim compliance with COVID-19 guidelines. However, there is substantial evidence to support the fact that the church has not been following the appropriate guidelines. The *Interim Guidance for Administrators and Leaders of Community- and Faith- Based Organizations to Plan, Prepare, and Respond to Coronavirus Disease 2019* ("CDC Guidelines") are divided into recommendations based on the severity of the community outbreak. Plaintiff relies on the wrong stage of infection guidelines. At the point where there is a mild to moderate community transmission, the CDC Guidelines recommend: 1) following the instructions of local officials, and 2) cancelling services. Plaintiff continues to flout these guidelines while at the same time citing them to support Plaintiff's practice. *See* Exhibit 1 photographs showing non-compliance. Some of the On Fire parishioners have not been practicing proper social distancing guidelines consistent with the requirements in the March 19 Order.

Municipalities like the state have broad police powers, including the power to establish laws that promote the "health, safety and welfare of citizens." *Town of Dillion v. Yacht Club Condominiums Home Owners Assoc.*, 325 F.3d 1032, 1038 (Col. 2014) (internal citations omitted); *See also McCollum v. City of Berea*, 53 S.W.3d 106, 109-10 (Ky. App. 2000) (proper functions of a city's police power include promoting the health, safety, and public welfare of its citizens); (It has always been understood that all "rights" which involve conduct are subject to limitations by the essential police measures which protect public health, safety and welfare.) *See Fowler v. Obier*, 224 Ky. 742, 7 S.W.2d 219 (1928). Courts generally uphold measures enacted pursuant to police power if related to health, safety and welfare of community. *See also Bosworth v. City of Lexington*, 125 S.W. 995 (Ky. 1939); *Adams, Inc. v. Louisville and Jefferson County Bd. of Health*, 439 S.W.2d 586, 589-92 (Ky. 1969).

The United States Supreme Court in *Chicago, Burlington, Quincy Railway Co.*, 200 U.S. 561, 592-93, 26 S.Ct. 341 (1906) also indicated police power is power inherent in every sovereignty to prohibit all that is harmful to the comfort, safety and welfare of society and to prescribe regulations to promote public health and safety in addition to aid welfare.

In *Jacobson v. Comm. of Massachusetts*, 197 U.S. 11, 25 S. Ct. 358, 361 (1905), the Court stated even the most basic human "rights" are subject to the essential power of the state to protect the public when there is a clear and present danger, *Schenck v. United States*, 249 U.S. 47, 39 S. Ct. 47, 52 (1919). Thus, the word "right" implies that the individual or group is free to engage in the activity in question except when it endangers the public health, safety, or welfare. This historic limitation on all "rights" clearly shows that Congress by protecting certain employee "rights" did not intend to bar the adoption of essential state police measures which preserve the public health, safety or welfare. There are enough historical limitations on the states' ability thus to interfere

11

with an employee right to insure that the essence of the "right" which Congress sought to protect will not be jeopardized, *compare Thomas v. Collins*, 323 U.S. 516, 323 (1945).

In *Cantwell v. Connecticut*, 310 U.S. 296 (1940), it was stated by the United States Supreme Court that a state police regulation restricting freedom of religion could not be tolerated except: "When clear, and present danger or riot, disorder, interference with traffic upon the public streets, or other *immediate threat to public safety, peace, or order appears, the power of the State to prevent or punish is obvious*." (Emphasis added.)  In the subject instance, there is a clear and present danger.  The recent past practices at the Plaintiff's drive-in services show their many abuses of congregating together in violation of March 19 Order to practice social distancing set forth in the CDC guidelines.  Parishioners are shown in photographs (Ex. 1) in close proximity to one another, standing in truck beds, or with windows rolled all the way down, and passing collection basket.  Other parishioners were in the open and on stage performing without protective equipment or proper spacing.  These behaviors are cautioned against in the CDC guidelines and pose a real danger to further spread of COVID-19 in the community.

As stated in *Cantwell*, 310 U.S. 296, 303-04 (1940), the First Amendment "embraces two concepts, - freedom to believe and freedom to act.  The first is absolute but, in the nature of things, the second cannot be.  Conduct remains subject to regulation for the protection of society."  *See also Founding Church of Scientology of Washington, D.C. v. U.S.*, 409 F.2d 1146, 1154-55 (D.C. Cir. 1969).  In *Cantwell*, supra, 310 U.S. at 304, the Supreme Court stated that "power to regulate must be so exercised as not, in attaining a permissible end, unduly to infringe the protected freedom."  And in *West Virginia State Board of Education v. Barnette*, 319 U.S. 624, 639 (1943), the Supreme Court spoke more elaborately and more forcefully to the same issue:

> The right of a State to regulate, for example, a public utility may well include, so
> far as the due process test is concerned, power to impose all of the restrictions which

> a legislature may have a 'rational basis' for adopting. But freedoms of speech and of press, of assembly, and of worship may not be infringed on such slender grounds. They are susceptible of restriction only to prevent grave and immediate danger to interests which the State may lawfully protect.

*See also Founding Church of Scientology of Washington, D.C.*, 409 F.2d at 1155, quoting *Barnette* 319 U.S. at 639. Further, in *N.L.R.B. v. World Evangelism, Inc*., 656 F.2d 1349, 1354 (9th Cir. 1981), the Ninth Circuit Court of Appeals recognized the freedom to act is subject to regulation for the protection of society. *Citing Cantwell,* 310 U.S. at 303-04 and other authority. As expressed by the Sixth Circuit Court of Appeals in *Fair Housing Advocates Assoc., Inc. v. City of Richmond Heights, Ohio,* 209 F.3d 626, 635 (6th Cir. 2000), there is a presumption of validity of a local government ordinances exercising political power to protect the public health, safety and welfare. See also *Batchelder*, concurring opinion, recognizing deference to exercises of a locality's police power for health and safety of citizens. *Id.* at 638.

Here, Plaintiff's practices pose a real and present danger to the health and welfare of Kentucky's citizens. Congregating in close proximity violates social distancing guidelines mandated in the March 19 Order, and Plaintiff has clearly shown an inability to follow these guidelines. The affidavit of Pastor Chuck Salvo attached to Plaintiff's Memorandum misrepresents to the Court that his services were attended by parishioners that were practicing proper social distancing in compliance with the March 19 Order. The Court's reliance on the affidavit is in error.

Louisville Metro has been actively engaged in the enforcement of the March 19 Order and others issued by the Governor, the Health Department, and Mayor Fischer. Louisville Metro has issued sixteen Notice-Orders to businesses and individuals in the community who have failed to engage in proper social distancing or congregated in violation of the March 19 Order. Attached hereto are the Notice-Orders issued by the Health Department that establishes this drive-in church

13

service was not targeted or threatened.  *See* attached Exhibit 3 with affidavit.  Louisville Metro simply asked it to comply with the same mandate issued to all residents of this Commonwealth of Kentucky.

Mayor Fischer has acted responsibly and properly in protecting the community from a clear and present danger.  As of April 13, 2020, there have been 1,963 Kentuckians and 569 Louisvillians infected with COVID-19; 97 of these Kentuckians and 45 Louisvillians have died as a result of this highly contagious disease.  There is a compelling reason for Mayor Fischer tell his residents not to engage in social gatherings such as a drive-in church service, especially in the state's highest population density county.  Given these facts and Plaintiff's past practices, Louisville Metro's position is not overly broad.  The Plaintiff has not shown a likelihood of success on any of its claims.  Equities are not in their favor where there is a clear and present danger facing the community.

## V. CONCLUSION

In the words of Mayor Fischer on April 9, 2020: "We are doing all of this because we want to save the lives your congregants, of your flock.  All of our great faith traditions, all of our faith traditions emphasize community, love one another.  Love one another, right now, we are social distancing."  Defendants urge the Court to not enjoin the government with its enforcement of efforts to end the transmission of COVID-19.  Louisville Metro has the highest number of COVID-19 deaths in the Commonwealth of Kentucky, the district in which this court presides. Based upon the premises stated herein and the authorities cited, the Court should dissolve the temporary restraining order and deny Plaintiff its request for a preliminary injunction.  An injunction on the Mayor's right to enforce the March 19 Order may confuse the community and prevent Louisville

14

Metro from properly enforcing the government's efforts to stop the spread of this pandemic disease.

Respectfully submitted,

MICHAEL J. O'CONNELL
JEFFERSON COUNTY ATTORNEY

/s/ John F. Carroll
JOHN F. CARROLL
JASON D. FOWLER
Assistant Jefferson County Attorneys
531 Court Place, Suite 900
Louisville, Kentucky 40202
Phone (502) 574-6321
Fax (502) 574-4215
john.carroll2@louisvilleky.gov
jason.fowler@louisvilleky.gov
*Counsel for Defendants*

<u>CERTIFICATE OF SERVICE</u>

It is hereby certified that a copy of the foregoing Motion to Dissolve Temporary Injunction Order and Response to Motion for Preliminary Injunction with tendered Order was electronically filed on this 13th day of April 2020, via the Court's electronic mail system which in turn will email this pleading to the following:

J. Brooken Smith
Michael G. Swansburg, Jr.
SWANSBURG & SMITH, PLLC
291 N. Hubbards Lane, Suite 172
Box 321
Louisville, Kentucky 40207
jbs@swansburgandsmith.com
mgs@swansburgandsmith.com

Matthew T. Martens
Kevin Gallagher
Hyun-Soo Lim
Andrew Miller
WILMER CUTLER PICKERING HALE AND DORR LLP
1875 Pennsylvania Avenue, NW

15

Washington, DC 20006
matthew.martens@wilmerhale.com


Hiram S. Sasser, III
Roger Byron
FIRST LIBERTY INSTITUTE
2001 W. Plano Pkwy
Plano, TX 75075
hsasser@firstliberty.org

/s/ John F. Carroll
JOHN F. CARROLL

16