# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY

*Electronically filed*

| | |
|---|---|
| ON FIRE CHRISTIAN CENTER, INC., <br>    *Plaintiff* <br><br> v. <br><br> GREG FISCHER, in his official capacity as Mayor of Louisville Metro, *et al.*, <br><br>    *Defendants* | Judge Justin R. Walker <br> Civil Action No. 3:20-cv-264 |

## *AMICUS CURIAE* BRIEF OF
## ATTORNEY GENERAL DANIEL CAMERON

| | |
|---|---|
| DANIEL CAMERON <br>  *Attorney General* | S. CHAD MEREDITH <br>  *Solicitor General* |
| BARRY L. DUNN <br>  *Deputy Attorney General* | MATTHEW F. KUHN <br>  *Deputy Solicitor General* |
| OFFICE OF THE ATTORNEY GENERAL <br> 700 Capital Avenue, Suite 118 <br> Frankfort, Kentucky 40601 | BRETT R. NOLAN <br>  *Special Litigation Counsel* |

The Court has invited Attorney General Daniel Cameron to file an *amicus curiae* brief addressing whether the Beshear administration's March 19, 2020 order "prohibit[s] drive-in religious services." [DN 17].

## ARGUMENT

The Beshear administration's March 19 order means what it says. And what it says is that drive-in worship services are illegal. As applied to On Fire Christian Center, that order is "'beyond all reason,' unconstitutional." [*See* DN 6 at 3 (citation omitted)].

**I.  The Beshear administration's March 19 order prohibits drive-in church services.**

To say that the Beshear administration's March 19 order is broadly written understates its scope. The order prohibits "[a]ll mass gatherings" and specifically includes "faith-based" mass gatherings among those banned. [DN 10-2 at 1]. The order does not quantify the number of people that constitutes a "mass gathering." Instead, the order expansively defines a "mass gathering" to include "any event or convening that brings together groups of individuals, including, but not limited to, community, civic, public, leisure, *faith-based*, or sporting events; parades; concerts; festivals; conventions; fundraisers; and similar activities." [*Id.* (emphasis added)]. The order contains a carve-out from this prohibition, which is included "[f]or the avoidance of doubt." [*Id.*]. That exception states:

> [A] mass gathering does not include normal operations at airports, bus and train stations, medical facilities, libraries, shopping malls and centers, or other spaces where persons may be in transit. It also does not include typical office environments, factories, or retail or grocery stores

1

> where large numbers of people are present, but maintain appropriate social distancing.

[*Id.*].

Under the broad terms of the March 19 order, a drive-in church service is undoubtedly an event or convening that is "faith-based." There also is no question that drive-in services do not fall within the order's exception. The only remaining question, then, is whether a drive-in church service is "any event or convening that brings together groups of individuals." It plainly is. As On Fire's complaint alleges, its drive-in services are a "physical corporate gathering of believers." [DN 1 ¶ 17; *see also id.* ¶ 21]. Indeed, the whole point of these services is to gather together as a church body. But for On Fire's drive-in church services, the attendees would not leave their homes, drive to On Fire's campus, park in its parking lot, and listen to and participate in a worship service alongside their fellow churchgoers. This cannot be anything other than an "event or convening that brings together groups of individuals."

The near-boundless scope of the March 19 order reinforces this conclusion. The order contains numerous terms of inclusion that expand the scope of the prohibition of "mass gatherings"—namely, the terms "[a]ll," "include," "any," "including, but not limited to," and "similar activities." [*See* DN 10-2 at 1]; *see also* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 132–33 (2012). These terms convey the immense breadth of the term "mass gathering." The order also utilizes redundancy to ensure that nothing slips through the cracks. Most notably, the order prohibits "any event *or convening* that brings together groups of

2

individuals." [*Id.* (emphasis added)]. By definition, a "convening" is something that itself brings people together. *American Heritage Dictionary* 319 (2d ed. 1985) (defining "convene" as "[t]o assemble, usually for an official or public purpose; meet formally"). Yet, the order nevertheless prohibits not just a convening, but a "convening that brings together groups of individuals." The point here is that the March 19 order defines "mass gathering" as expansively as possible. So defined, a drive-in religious service constitutes a prohibited "mass gathering."

In his *amicus* brief, Governor Beshear disagrees, arguing that the "intent" of the March 19 order is "to prohibit person-to-person interaction, not interactions where people remain in a vehicle." [DN 27 at 1–2]. But the March 19 order does not say that. *See Cole v. Young*, 351 U.S. 536, 556 (1956) ("[An executive order's] failure to state explicitly what was meant is the fault of the Government."); *see also Revenue Cabinet v. O'Daniel*, 153 S.W.3d 815, 819 (Ky. 2005) ("[W]e assume that the Legislature meant exactly what it said, and said exactly what it meant." (cleaned up) (citation omitted)). It is telling that Governor Beshear's *amicus* brief fails even to mention the actual text of his administration's order. In any event, Governor Beshear's favored interpretation of the order, which is at odds with its plain language, certainly does not limit Louisville Metro's ability to enforce the order according to its plain language. As a result, the appropriate course is not for Governor Beshear to attempt to narrow the March 19 order in his *amicus* brief, but for his administration to formally amend the order.

## II. Governor Beshear's public statements do not affect Louisville Metro's power to enforce the March 19 order.

This brings us to Governor Beshear's public statements about drive-in church services. Governor Beshear has discussed this topic during a press conference on at least eight occasions.[1] In his view, "you can only [conduct a drive-in religious service] if you follow the set of rules."[2] This "set of rules," which appears to be an *ad hoc* application of the guidelines from the Centers for Disease Control and Prevention, is:

> Number one is only one family in a car . . . . Two, the cars have to be more than six feet apart . . . . Three, you cannot get out of the car . . . . Last, you can't be, you can't be passing things in and out of the car.[3]

These "rules" notwithstanding, Governor Beshear also has made clear that he "fully support[s]" local leaders who decide to halt drive-in religious services.[4] As he put it, "[w]e have a county judge in the west and the Mayor of Louisville that went a step further and I don't criticize them at all. In fact, I was supporting them for it . . . ."[5] In

---

[1] Mar. 20, 2020 Press Conference, at 46:28–47:13, *available at* https://www.youtube.com/watch?v=vG_nreWckWw&feature=youtu.be; Mar. 31, 2020 Press Conference, at 48:35–50:48, *available at* https://www.youtube.com/watch?v=lfgjiC-GBuk; Apr. 5, 2020 Press Conference, at 58:55–1:01:12, *available at* https://www.youtube.com/watch?v=gSzUuOTzGE8; Apr. 6, 2020 Press Conference, at 47:20–48:55, *available at* https://www.youtube.com/watch?v=ohFxskUTL0E; Apr. 8, 2020 Press Conference, at 1:07:54–1:09:41, *available at* https://www.youtube.com/watch?v=Rpyq5j-agRU; Apr. 10, 2020 Press Conference, at 49:19–51:23, *available at* https://www.youtube.com/watch?v=SJVDhu38S68; Apr. 11, 2020 Press Conference, at 51:40–55:26, *available at* https://www.youtube.com/watch?v=X_1NS02f0CI; Apr. 12 Press Conference, at 42:20–42:26, 47:47–47:50, *available at* https://www.youtube.com/watch?v=NGR6MY5WQi4.
[2] Apr. 5, 2020 Press Conference, at 59:53.
[3] *Id.* at 59:57.
[4] Apr. 8, 2020 Press Conference, at 1:08:25.
[5] Apr. 11, 2020 Press Conference, at 53:06.

4

Case 3:20-cv-00264-JRW Document 29 Filed 04/17/20 Page 6 of 12 PageID #: 269

another press conference, Governor Beshear voiced "support [for] both the Mayor of Louisville and the County Judge in Hopkins [County] in their recommendations or in their orders to the people of those counties."[6]

Governor Beshear's statements are hard to reconcile with the broad prohibition of "mass gatherings" in his administration's March 19 order. Whereas the March 19 order unconstitutionally prohibits drive-in worship services, Governor Beshear—whose administration issued that order—has publicly stated that these services can be held if the "rules" are followed. And, to date, the Beshear administration has not revised the March 19 order to align with Governor Beshear's remarks.

What should be made of this? Unlike the March 19 order, Governor Beshear's public statements do not have the force of law. *See, e.g.*, KRS 39A.180(2) ("All *written orders* . . . promulgated by the Governor . . . shall have the full force of law . . . ." (emphasis added)). As a result, the only way to interpret these statements is that Governor Beshear does not himself intend to enforce his administration's March 19 order against drive-in religious services as long as the "rules" are followed.[7]

---

[6] Apr. 6, 2020 Press Conference, at 47:48.
[7] The Beshear administration's decision to issue an expansive written order that prohibits drive-in church services while simultaneously telling people how to conduct these services creates many problems. Foremost among them is that it sows confusion about how Kentuckians can exercise their First Amendment rights, which inevitably results in the chilling of those rights. *See Grayned v. City of Rockford*, 408 U.S. 104, 109 (1972) ("Uncertain meanings inevitably lead citizens to steer far wider of the unlawful zone than if the boundaries of the forbidden areas were clearly marked." (cleaned up) (citation omitted)).

5

Important for present purposes, Governor Beshear is not the only public official who can enforce the March 19 order. Kentucky law plainly empowers Louisville Metro to enforce the March 19 order separate and apart from the governor. *See, e.g.*, KRS 39A.180(3). This includes through the warrantless arrest of those who violate the order. KRS 39A.190. Thus, the fact that Governor Beshear has chosen not to enforce the March 19 order in no way requires Louisville Metro to make the same decision. In fact, as noted above, Governor Beshear "fully support[s]" local officials who enforce the March 19 order to halt drive-in religious services.[8]

### III. As applied to On Fire, the Beshear administration's March 19 order violates the First Amendment and Kentucky law.

Although a plain reading of the March 19 order clearly prohibits drive-in church services, any enforcement of the Beshear administration's order against On Fire would just as plainly violate the First Amendment and Kentucky law. The reason for that is not complicated. Louisville Metro continues to allow non-religious activities that pose the same risk of harm as drive-in church services do, which means that any government threat against churchgoers is exactly the kind of unlawful targeting that the First Amendment prohibits.

The freedom to practice one's faith is a defining feature of American liberty. "Since the founding of this nation, religious groups have been able to 'sit in safety under [their] own vine and figtree, [with] none to make [them] afraid.'" *Tree of Life Christian Schools v. City of Upper Arlington*, 905 F.3d 357, 376 (6th Cir. 2018)

---

[8] Apr. 8, 2020 Press Conference, at 1:08:25.

6

(Thapar, J., dissenting) (quoting Letter from George Washington to Hebrew Congregation in Newport, R.I. (Aug. 18, 1790)). As this Court has explained, the protection of religious liberty is one of America's "most audacious guarantees." [DN 6 at 5]. Yet that guarantee will not persist unless courts prevent "even 'subtle departures from neutrality' on matters of religion." *Masterpiece Cakeshop, Ltd. v. Colo. Civil Rights Comm'n*, __ U.S. __, 138 S. Ct. 1719, 1731 (2018) (quoting *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 534 (1993)).

The First Amendment stands as the bulwark against such departures. While the text provides that "Congress shall make no law . . . prohibiting the free exercise" of religion, U.S. Const. amend. I, the Supreme Court long ago recognized that this fundamental protection must apply with equal force against the acts of state and local governments. *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940). And even before *Cantwell*, many states imposed similar constitutional protections for their own citizens. In fact, the First Amendment came after nearly 150 years of colonial experimentation with religious-liberty protections. *See* Michael W. McConnell, *The Origins & Historical Understandings of Free Exercise of Religion*, 103 Harv. L. Rev. 1409, 1421–30 (1990). And though Kentucky was not one of the original states adopting the Bill of Rights, it proudly declared in its first constitution of 1792 "[t]hat the civil rights, privileges, or capacities of any citizen shall in nowise be diminished or enlarged on account of his religion." Ky. Const. of 1792, Art. XII.

Today, the black letter law governing Free Exercise claims is straightforward. The First Amendment prohibits the government from burdening one's "free exercise"

7

of religion. *See Cantwell*, 310 U.S. at 303. And Kentucky's present constitution does the same. *See* Ky. Const. §§ 1, 5; *Gingerich v. Commw.*, 382 S.W.3d 835, 839 (Ky. 2012). In practice, that means the government cannot implement laws "targeting religious beliefs as such." *Lukumi*, 508 U.S. at 533. But it also means that "[o]fficial action that targets religious conduct for distinctive treatment cannot be shielded by mere compliance with the requirement of facial neutrality." *Id.* at 534. Public officials, in other words, cannot target religion through selective enforcement of otherwise neutral laws. *See id.* at 543. Rather, laws must be neutral and generally applicable in both text and reality to survive constitutional scrutiny. *See Employment Div., Dep't of Human Res. of Or. v. Smith*, 494 U.S. 872, 877–78 (1990). And courts must "survey meticulously the circumstances" of a case to ferret out unlawful attempts to use facially neutral laws to burden religious exercise. *Lukumi*, 508 U.S. at 534.

Under these well-established principles, Louisville Metro cannot enforce the March 19 order against drive-in church services. The order itself arbitrarily targets religious activities for unfavorable treatment. [*See* DN 10-2 at 1]. While "mass gatherings" are prohibited in general, the order allows gatherings "where large numbers of people are present" in "typical office environments, factories, or retail or grocery stores" so long as people "maintain appropriate social distancing." [*Id.*]. Despite this, the order expressly prohibits any similar gatherings if they can be characterized as "faith-based" activities. [*Id.*]. Targeting religious activity in this manner is precisely the kind of burdensome treatment forbidden by the First Amendment.

8

In such circumstances, Louisville Metro can prevail only by satisfying strict scrutiny. But "[a] law that targets religious conduct for distinctive treatment or advances legitimate governmental interests only against conduct with a religious motivation will survive strict scrutiny only in rare cases." *Lukumi*, 508 U.S. at 546. This is not one of those cases.

No one doubts that the government has a compelling interest in preventing the spread of COVID-19 during the current pandemic. But so far, neither Governor Beshear nor Louisville Metro has offered an explanation as to why it is necessary to prohibit religious activities that pose exactly the same risk as similar, non-religious activities. [*See* DN 6 at 12 ("[Louisville's actions are] underinclusive because they don't prohibit a host of equally dangerous (or equally harmless) activities that Louisville has permitted on the basis that they are 'essential.'")].

Perhaps the reason for this differing treatment is that some government officials deem the businesses that remain open as more essential than church, and so applying similar restrictions is simply infeasible. The Court should be skeptical of any such claim. *See Smith*, 494 U.S. at 887 ("What principle of law or logic can be brought to bear to contradict a believer's assertion that a particular act is 'central' to his personal faith?"). It is not the government's role to pass judgment on the importance of one's faith or how to practice it. *See id.* By even suggesting that religious gatherings lack some essential quality that other similarly situated gatherings might have, government officials are playing a dangerous game. *See Lukumi*, 508 U.S. at 542 ("All laws are selective to some extent, but categories of

9

selection are of paramount concern when a law has the incidental effect of burdening religious practice.").

From its brief, it appears that Louisville Metro is concerned that attendees at drive-in church services will not practice social distancing. [DN 10 at 2]. But as this Court has noted, *Lukumi* rejected that kind of overinclusive line-drawing. *See Lukumi*, 508 U.S. at 538; [DN 6 at 12–13]. If the real danger is that people will gather in close proximity, the order could simply require that churchgoers "maintain appropriate social distancing," just as it does for people gathering in offices or retail stores. [DN 10-2 at 1]. By failing to tailor its prohibition in this manner, the March 19 order as applied to On Fire's drive-in worship services falls far short of satisfying strict scrutiny.

Nor can Louisville Metro find support in *Jacobson v. Massachusetts*, 197 U.S. 11 (1905). Even under *Jacobson*, a law is invalid if "purporting to have been enacted to protect the public health, the public morals, or the public safety, [the law] has no real or substantial relation to those objects, or is, beyond all question, a plain, palpable invasion of rights secured by the fundamental law." *Id.* at 31. That is precisely the problem that the March 19 order faces here. Singling out religious activity for disfavored treatment is the kind of "palpable invasion of rights" that even a pandemic cannot justify. [*See* DN 6 at 15 & n.73].

## CONCLUSION

For the reasons explained above, the Beshear administration's March 19 order prohibits a drive-in religious service like that held by On Fire on Easter Sunday.

10

Pandemic or not, targeting the communal expression of religious beliefs for disfavored treatment cannot stand.

> Respectfully submitted by,
>
> Daniel Cameron
> ATTORNEY GENERAL
>
> /s/ Matthew F. Kuhn
> Barry L. Dunn (Bar # 93787)
>   *Deputy Attorney General*
> S. Chad Meredith (Bar # 92138)
>   *Solicitor General*
> Matthew F. Kuhn (Bar # 94241)
>   *Deputy Solicitor General*
> Brett R. Nolan (Bar # 95617)
>   *Special Litigation Counsel*
>
> Office of the Attorney General
> 700 Capital Avenue, Suite 118
> Frankfort, Kentucky 40601

## CERTIFICATE OF SERVICE

I filed the above document on April 17, 2020 using the Court's CM/ECF system, which will electronically serve a copy to all counsel of record.

> /s/ Matthew F. Kuhn

11